UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CRIMINAL ACTION NO. 10-8-JBC**

**UNITED STATES OF AMERICA,**                                      **PLAINTIFF,**

**V.**               **MEMORANDUM OPINION AND ORDER**

**BRYAN LAMONT WILLIAMS,**                                  **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the defendant's motion to suppress (R. 17). Although the affidavit upon which the search warrant was issued was not supported by probable cause, the court will deny the motion because the officer executing the warrant acted in good-faith reliance upon it.

**I. Facts**

The defendant is charged with a variety of cocaine-related offenses based on evidence found by police on January 5, 2010, inside a house at 749 Vermillion Peak Pass in Lexington, Kentucky. The affidavit upon which the warrant to search the house was issued recounts the following series of events that police claim occurred in Lexington involving the defendant:

On January 13, 2008, the defendant called the police to report a robbery at his residence on Seventh Street. When police arrived and looked around in the residence, they suspected that the robbers had been looking for narcotics. On January 17, 2008, at the defendant's second residence on Polk Lane, police

retrieved garbage that was located at the curb ("trash pull"). They found one white garbage bag containing two opened heat-and-vacuum-sealed bags with square corners, and mail matter with the defendant's name and Seventh Street address on it. In February 2008, a qualified informant advised police that he had information that an individual known as "Mind Reaper" broke into the defendant's house and stole one-and-a-half kilograms of cocaine. On June 15, 2008, police received a proffer from an anonymous defendant in another case saying that the defendant in the present case is known as "Soulja Slim," and variations on that name, as well as "B." The proffering defendant stated that in the past, the defendant had provided him with approximately 250 grams of cocaine five or six different times. In December 2008, the police observed the defendant driving to a third residence on Sherrard Circle. On February 9, 2009, police conducted a trash pull at the Sherrard Circle residence. They found two white garbage bags. Inside the bags, police found two small plastic bags with the corners torn away. On July 23, 2009, the defendant was issued a speeding ticket at an intersection very near 749 Vermillion Peak Pass. On September 23, 2009, the defendant was confirmed to be the contact name for the security system installed at 749 Vermillion Peak Pass. On November 10, 2009, the defendant was followed in his vehicle by the affiant, Detective K. J. Ford, and another officer, and was observed entering the residence at 749 Vermillion Peak Pass. December 12, 2009, was the defendant's birthday. On January 4, 2010, police conducted a trash pull at 749 Vermillion Peak Pass.

They found three white plastic garbage bags. The garbage within contained two torn, smaller plastic bags containing "marijuana in the form of seeds and stems," according to the affidavit in support of the search warrant, and a partially eaten birthday cake that read, "Happy Birthday Slim."

The affidavit noted multiple times that despite trash being available curbside in three instances, police efforts to pull the defendant's trash at various residences were continually frustrated because the defendant did not regularly place his garbage at the curb. The affidavit contained an attachment which described the residence in question as "947 Vermillion Peak Pass" instead of "749 Vermillion Peak Pass." The rest of the affidavit and the warrant itself described the residence as "749 Vermillion Peak Pass." The warrant also included a physical description of the house:

> . . . a single family, two story dwelling constructed of brick veneer and vinyl siding. There is a covered porch that leads to an entry door. There are maroon shutters that accent the windows on the front portion of the residence. 749 Vermillion Peak Pass is situated between 745 and 753 Vermillion Peak Pass. 749 Vermillion Peak Pass faces to the south and is on the north side of the street. 749 Vermillion Peak Pass is clearly marked and is identifiable and distinguishable to the affiant.

On January 5, 2010, the day after the trash-pull discovery of seeds and stems, the affidavit was reviewed and the tendered warrant signed by Fayette District Court Judge T. Bruce Bell. It directed police to search 749 Vermillion Peak Pass for marijuana, notes, letters, writings, documents, recordings, safes, monies,

3

weapons, computers, other electronic devices, and drug paraphernalia.

At a suppression hearing, Detective Ford admitted that the seeds and stems found in the January 4 trash pull amounted to two seeds and two stems. He testified that on January 5, he briefed a team of 8-12 officers before he led the execution of the search warrant. En route to the residence, he realized that he had provided the wrong address of the residence – "947" instead of "749" – on the attachment to the affidavit in support of the warrant application. He verified that the address on the warrant itself was correct. He further testified that due to his experience with the defendant's elusiveness, he believed that he needed to execute the warrant at that time instead of contacting the judge about the mistake on the attachment to the affidavit. He testified that after the briefing, he led the team to execute the search warrant at 749 Vermillion Peak Pass, an address he knew well from his own surveillance, finding approximately 22.7 grams of cocaine inside the residence.

## II. Analysis

### A. Particularity

The Fourth Amendment to the United States Constitution "requires that search warrants . . . 'particularly describe the place to be searched . . . .'" *United States v. Durk*, 149 F.3d 464, 465 (6th Cir. 1998) (quoting U.S. CONST. amend. IV). "The test for determining whether a search warrant describes the premises to be searched with sufficient particularity 'is not whether the description is technically accurate in every detail,' [*United States v.*] *Prout*, 526 F.2d [380,] at

387-88, but rather whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched.'" *Ibid.* (quoting *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989)). The fact that the address of the house to be searched was listed correctly in the affidavit and tendered warrant but incorrectly in the attachment to the affidavit is not a fatal flaw in the affidavit's particularity, especially given the physical description of the house provided in the warrant, and the fact that Detective Ford, the officer who had conducted prior surveillance, also led the execution of the search warrant. "Courts routinely have upheld warrants, such as the one at issue, 'where one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place with particularity.'" *Durk*, 149 F.3d at 466 (quoting *United States v. Gitcho*, 601 F.2d 369, 372 (8th Cir. 1979) and *United States v. Shropshire*, 498 F.2d 137, 141-42 (6th Cir. 1974)). The transposed number on the attachment does not destroy the affidavit's otherwise particular description of the house at 749 Vermillion Peak Pass.

    B. <u>Probable Cause</u>

"[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165 (1978) (citing *Aguilar v. Texas*, 378 U.S. 108, 114-15 (1964)). The defendant's identity as a person who resided at 749 Vermillion Peak Pass, or at least as a

5

person associated with a place for which there existed a required nexus with evidence of illegal drug activity, *see United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)), is not reasonably in question. The police observed the defendant coming and going at the house, and the defendant was listed as a point of contact for the installed security system. The cake found with seeds and stems in the trash from the house at 749 Vermillion Peak Pass read "Happy Birthday Slim," a nickname reasonably believed by Detective Ford, in his years of investigating the defendant, to belong to him.

However, by January 5, 2010, almost all of the information in the affidavit prepared by Detective Ford relating to evidence of illegal drug activity was stale. *See United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001)*; United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). "'Information of an unknown and undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation.' That is because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (quoting *United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005)). Though the residence at 749 Vermillion Peak Pass may qualify as a "secure operational base," the defendant had proven to be nomadic, and the contraband at issue was perishable and easily transferable. *See United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006).

The evidence that prompted Detective Ford to seek a search warrant was two seeds, two stems, and torn plastic bags with no accompanying drug residue in three bags of garbage that included a cake that appeared to have been partially eaten at least three weeks prior to the trash pull. The police knew that the defendant's garbage was not taken regularly to the curb, making it less likely that the seeds and stems were fresh. Despite the defendant's rumored history, these items did not make it "fairly probable that there would be additional evidence of contraband or evidence of a crime in the place to be searched." *United States v. Brooks*, 594 F.3d 488, 2010 WL 393647, at *9, U.S. App. LEXIS 2441, at *9 (6th Cir. 2010) (citing *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)). For these reasons, and because two suspected marijuana seeds and stems do not adequately refresh stale evidence consistent with cocaine use or trafficking,[1] the latest of which was found almost one year prior to the discovery of the seeds and stems, the affidavit included with the warrant application was not supported by probable cause.

    C. <u>Good Faith</u>

The exclusionary rule is designed to deter police misconduct, and should not be applied to deter objectively reasonable law enforcement activity. *See generally*

---

[1] Information provided by the qualified informant in February 2008, and the anonymous defendant on June 15, 2008, might support a finding of probable cause, *see United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004), had it not been stale at the time of the warrant application. *See Greene*, 250 F.3d at 480-81; *Frechette*, 583 F.3d at 377-78 (citing *Spikes*, 158 F.3d at 923).

7

*United States v. Leon*, 468 U.S. 897 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* at 921. However, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id.* at 922. In this case, Detective Ford performed much of the investigation, prepared the affidavit, and executed the search warrant. He credibly testified at a suppression hearing that in the course of receiving information about the defendant over a number of years, he waited to apply for a search warrant until he believed that he had probable cause to support an application. After the warrant was issued, he knew that he was executing a warrant based on his own lengthy investigation of the defendant. All of the evidence presented shows that Detective Ford acted in good-faith reliance that the warrant was obtained by an affidavit supported by probable cause.

Yet suppression remains an "appropriate remedy if the magistrate or judge issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923 (citing *Franks*, 438 U.S. 154). Detective Ford did not re-visit Judge Bell upon realizing at the briefing that he made the mistake of listing "947" instead of "749" on the attachment to the affidavit. However, he had been to the residence multiple times for the purposes of observation and a trash pull, and testified that even though he realized that he made a mistake in transposing the

8

number, he knew that he would be the one leading the execution of the search warrant. Due to his ability to positively identify the correct house, he reasoned that there was very little danger of the wrong house being searched by accident. The warrant itself listed "749," and the affidavit provided a thorough physical description of the property. It is highly improbable that Judge Bell was somehow misled simply because the attachment to the affidavit – as opposed to the affidavit and tendered warrant, which listed the correct number – listed "947" instead of "749" Vermillion Peak Pass. Given that the affidavit correctly listed "749" instead of "947" throughout, a reasonable police officer would not have believed the issuing judge to be misled in these circumstances as to the residence in which it would be "fairly probable that there would be additional evidence of contraband or evidence of a crime . . . ." *Brooks*, 594 F.3d 488, 2010 WL 393647, at *9, U.S. App. LEXIS 2441, at *9 (citing *Berry*, 565 F.3d at 338).

Neither was the warrant facially deficient, nor is there any evidence that Judge Bell was not detached and neutral in issuing it. *See Leon*, 486 U.S. at 914. Though not supported by probable cause requisite to validate the warrant, the affidavit is not so lacking that reliance on it was objectively unreasonable. *See id.* at 915. "The evidence indicates, at the very least, the police affidavit 'provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.'" *United States v. Harris*, 6 Fed. Appx. 304, 308 (6th Cir. 2001) (quoting *Leon*, 468 U.S. at 926). Therefore, no reason exists why the good-faith exception does not apply to the procurement and execution of

the search warrant. Detective Ford's good-faith reliance on the search warrant signed by Judge Bell prevents the application of the exclusionary rule to the evidence found at the house at 749 Vermillion Peak Pass on the ground of insufficiency of the supporting affidavit. Accordingly,

    **IT IS ORDERED** that the defendant's motion to suppress (R. 17) is **DENIED**.

Signed on May 4, 2010

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY